# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00426-CR

**Ty Johnston, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT
NO. 2001-185, HONORABLE JACK H. ROBISON, JUDGE PRESIDING**

## O P I N I O N

A jury found Ty Johnston guilty of four counts of injury to a child causing bodily injury and one count of injury to a child causing serious bodily injury. *See* Tex. Pen. Code Ann. § 22.04(a)(1), (3) (West 2003). The jury also found that Mr. Johnston used a deadly weapon in the commission of those offenses in which he caused bodily injury. The court imposed a sentence of ten years' confinement and a $5,000 fine for each of the bodily injury counts and forty-five years' confinement and a $5,000 fine for the serious bodily injury count. Mr. Johnston challenges the legal and factual sufficiency of the evidence supporting the jury's deadly weapon findings, and his conviction for injury to a child causing serious bodily injury. Finding the evidence sufficient, we affirm the judgments of conviction.

**FACTUAL BACKGROUND**

At the time of the offenses, Mr. Johnston lived with his wife Crystal Johnston, her three-year-old son C.T., and her four-year-old daughter A.S. Crystal Johnston was pregnant with the first child of her marriage to Mr. Johnston. On May 23, 2000, C.T. and A.S. accompanied Mr. Johnston and Crystal Johnston to the South Austin Hospital because Crystal Johnston was experiencing labor pains. Hospital staff noticed that C.T. appeared sick; his face was black and blue, his skin was grey in color, and he could barely hold his head up. When asked about C.T.'s condition, Mr. Johnston informed them that C.T. had been vomiting and unable to keep food down for several days. C.T. was taken to the emergency room at the suggestion of the hospital staff.

Dr. Anthony Marks examined the lethargic C.T. and found that he had a temperature of 101 degrees, dehydration, a distended abdomen, bruises of varying age all over his body, a cigarette burn on his hand, and an old laceration on his chin. Dr. Marks testified at trial that he was concerned about internal bleeding and that C.T.'s condition was "life-threatening." Arrangements were made to transfer C.T. to the Children's Hospital of Austin; a team that specializes in transporting critically ill children was used.

Once at the Children's Hospital, C.T. was given intravenous fluids and became more alert. He was diagnosed as having a bowel obstruction caused by internal bleeding. The injury made it impossible for C.T. to digest food and water. It also led to a buildup of potentially toxic stomach secretions. A tube was inserted to empty C.T.'s stomach of air and fluid, and a feeding tube was surgically inserted. C.T. was hospitalized for approximately three weeks. Both his treating pediatrician and Dr. Beth Nauert, a pediatrician specializing in child abuse cases, testified that the

2

injury was a result of non-accidental blunt force trauma. Dr. Nauert also testified that the bruising throughout C.T.'s body was caused by blunt force trauma and that various hypothetical forms of abuse would be capable of causing death or serious injury.

Dr. Teresa Vasquez examined Crystal Johnston's other child A.S. the next day, May 24. She testified that she found bruising under A.S.'s eyes that appeared to be approximately ten days old. She also discovered bruises in various stages of healing on the forehead, chest, groin, buttocks, and the upper and lower extremities. She testified that the majority of the bruises did not appear to be the result of accidental trauma and may have been inflicted as recently as three days prior to the examination. Although none of A.S.'s injury's were life threatening, Dr. Vasquez testified that various forms of abuse that may have caused the injuries could have resulted in serious bodily injury.

Several witnesses testified about Mr. Johnston's explanations for his stepchildren's injuries. Austin police officer Richard Cross interviewed him both at the South Austin Hospital and the Children's Hospital. Cross testified that Mr. Johnston told him that C.T. fell off of a jungle gym a few days prior to going to the hospital and that he had been bedridden, vomiting, and unable to eat since. Mr. Johnston later told Cross that C.T. had also fallen off of a three-foot porch and that the boy was clumsy and fell down a lot. Cross testified that Mr. Johnston gave inconsistent stories as to why C.T. was brought to the hospital. Mr. Johnston also stated that he spanked C.T. and that C.T. bruised easily. He later told Cross that he was not allowed to spank C.T. and that he disciplined C.T. by standing him in a corner. Detective Douglas Havens, a member of the Child Abuse Unit, met Cross at the Children's Hospital and participated in the interview with Mr. Johnston there. He confirmed that Mr. Johnston attributed C.T.'s injuries to accidental falls.

3

Lockhart police officer David Powell and Child Protective Services (CPS) social worker Kelly Ragland interviewed Mr. Johnston on the evening of May 23, 2000. Powell testified that Mr. Johnston initially claimed that C.T.'s injuries were caused by accidental falls and that he was clumsy. Powell testified that he observed Mr. Johnston fidgeting and that his demeanor led Powell to believe that he was probably lying. Powell then confronted Mr. Johnston with probable lies that he believed Mr. Johnston had told him. Powell stated that Mr. Johnston began crying and told him that he "was a good parent, but sometimes he got angry." Mr. Johnston then told Powell and Ragland that he would often spank C.T. with his hands or a belt. Mr. Johnston admitted having shoved C.T.'s head into a wall and pushing him, causing C.T. to fall on his boot. He explained that he would hit C.T. to try to make the child stop crying. Mr. Johnston later continued to attribute some of C.T.'s bruises to a fall from playground equipment at the park. Mr. Johnston also told Powell and Ragland that he "hit [A.S.] and treated [A.S.] the same way that he did [C.T.]."

Ragland also testified about her conversation with Mr. Johnston. She recounted that, on May 31, Mr. Johnston called her office and was upset that C.T. and A.S. had been taken into CPS custody. When she called Mr. Johnston back, he denied harming the children, told her that he had not given a written statement, and that she could not prove anything. He told her that his stepdaughter's black eyes were caused by smeared mascara and that the children's mother was responsible for the abuse.

The State called Crystal Johnston to testify about her husband's abuse of the children. She explained that she and the children relied on Mr. Johnston to provide for the family. Crystal Johnston described several incidents of abuse in the weeks leading up to C.T.'s hospitalization. In

4

April 2000, Mr. Johnston arrived home angry after work, picked up C.T. and dropped him to the floor repeatedly, kicked him in the back and head, and punched him in the stomach. She recounted another incident on May 20 when Mr. Johnston picked up C.T. and threw him to the floor, kicked him in the back, punched him in the stomach, and beat him with a belt. Crystal Johnston also described that on either May 20 or May 21, Mr. Johnston threw C.T. against a wall and a chair, kicked and punched him in the stomach, and shoved his face into a wall.

At the time of the second beating, C.T. was already bruised and sick. Crystal Johnston testified that C.T. had been vomiting for two days straight. She and Mr. Johnston gave C.T. food and liquids, but he was unable to keep them down. They discussed taking C.T. to the hospital, but Mr. Johnston told her, "We can't take him to the hospital because if we do, the police will be called and we both will be taken to jail and arrested for the multiple bruisings on [C.T.]."

Crystal Johnston also testified that Mr. Johnston beat A.S. during the weeks leading up to C.T.'s hospitalization. She stated that Mr. Johnston would stand on top of the child, slap her in the face, punch her, kick her, and throw her across the floor. She testified that, before they went to the hospital on May 23, they dressed both children up with long sleeves and hats in an attempt to hide their injuries.

## DISCUSSION

Mr. Johnston challenges the legal and factual sufficiency of the evidence supporting all of the jury's deadly weapon findings, as well as his conviction for causing serious bodily injury to C.T. by omission.

5

**Serious bodily injury by omission**

In Mr. Johnston's first two issues, he challenges the legal and factual sufficiency of the evidence supporting the jury's verdict finding him guilty of intentionally or knowingly causing serious bodily injury to C.T. by failing to seek medical care and failing to provide sufficient liquids to prevent dehydration. *See* Tex. Pen. Code Ann. § 22.04(b). Mr. Johnston contends that the evidence was insufficient to establish his guilt because: (1) it was not his conscious objective or desire to cause serious bodily injury through his failure to provide medical care and sufficient liquids, (2) his failure to provide medical care and sufficient liquids did not cause the serious bodily injury, and (3) he did provide food and liquid to C.T. and C.T.'s prior injury is what caused the dehydration.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency); *Zuniga v. State*, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004) (factual sufficiency). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d at 159 (citing *Jackson*, 443 U.S. at 318-19). In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference must be accorded the fact finder's determinations, particularly

6

those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga*, 2004 Tex. Crim. App. LEXIS 668, at *20; *see Johnson*, 23 S.W.3d at 11.

Section 22.04(a) of the penal code provides, in relevant part, that a person commits an offense if he intentionally or knowingly, by act or omission, causes bodily injury to a child. Tex. Pen. Code Ann. § 22.04(a). Injury to a child is a "result of conduct" offense. *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985); *Dusek v. State*, 978 S.W.2d 129, 133 (Tex. App.—Austin 1998, pet. ref'd). Therefore, the State had to prove not only that Mr. Johnston intentionally or knowingly failed to provide medical care or fluids, but also that he intentionally or knowingly caused the injury. *See Alvarado*, 709 S.W.2d at 39 (contrasting "result of conduct" crimes with "nature of conduct" crimes). A person acts intentionally when "it is his conscious desire to engage in the conduct or cause the result." Tex. Pen. Code Ann. § 6.03(a) (West 2003). A person acts knowingly with respect to a result of his conduct when "he is aware that his conduct is reasonably certain to cause a result." *Id.* § 6.03(b).

### Conscious objective or desire

Mr. Johnston contends that the evidence was insufficient because the State did not produce evidence showing that it was his conscious objective or desire to cause serious bodily injury to C.T. through his failure to provide medical care or sufficient fluids. He cites several opinions from the court of criminal appeals and this court discussing the offense of causing serious bodily injury to a child. He contends that these cases require the State to prove that he both intended to

7

cause the injury and that he knew that his conduct was certain to cause the injury in order to obtain a conviction. *See Alvarado*, 704 S.W.2d at 39; *Beggs v. State*, 597 S.W.2d 375, 377 (Tex. Crim. App. 1980); *Dusek*, 978 S.W.2d at 133; *Wheeler v. State*, 952 S.W.2d 603, 609 (Tex. App.—Austin 1997, pet. ref'd).

In *Beggs*, for example, the court of criminal appeals discussed the fact that injury to a child is a "result of conduct" offense and stated:

> [T]he allegation in the indictment that the appellant did "(1) intentionally and (2) knowingly engage in conduct that caused serious bodily injury" was an allegation (1) that it was her conscious objective or desire to cause serious bodily injury and (2) that she was aware that her conduct was reasonably certain to cause serious bodily injury.

597 S.W.2d at 377. In *Wheeler*, this court similarly described the State's burden to prove injury to a child by omission:

> [T]he State had the burden of proving beyond a reasonable doubt that appellant had the "conscious objective or desire" to cause serious bodily injury to the victim by failing to provide medical care for the victim when appellant was then and there the caretaker of the victim, and had assumed care, custody and control over the victim.

952 S.W.2d at 608.[1] The cited language appears to require proof of the intentional *mens rea*, even though the statute assigns the same criminal liability to injuries that are the result of either intentional or knowing conduct.

---

[1] Justice Jones issued a dissenting opinion in *Wheeler* arguing that the evidence was sufficient to sustain the conviction and emphasizing the majority's failure to consider whether Wheeler acted knowingly. *Wheeler v. State*, 952 S.W.2d 603, 610 (Tex. App.—Austin 1997, pet. ref'd) ("appellant was convicted of intentionally *or knowingly* injuring the child victim").

In *Dusek*, this court discussed the close relationship between the intentional and knowing *mens rea*:

> In the context of a result-type offense . . . the distinction between knowing and intentional is narrow, and is preserved only because of the criminal law's traditional creation of specific intent offenses such as burglary, arson, and theft. We say "only" because there is little difference, in terms of blameworthiness, between one who wills a particular result and one who is willing for it to occur—between, for example, one . . . who shoots into a moving car, intending to kill the driver, and one who shoots into a moving car he knows is occupied. The formulated distinction between intentional and knowing, as to results, is thus between desiring the result and being reasonably certain that it will occur.

978 S.W.2d at 134 (citing Seth S. Searcy III & James R. Patterson, *Practice Commentary*, Tex. Pen. Code Ann. § 6.03 (West 1974)). In *Dusek*, however, this Court recognized that the State has provided sufficient evidence to convict a person of causing injury to a child by omission if that omission was made "either with the conscious objective or desire to cause serious bodily injury to the boy *or* with an awareness that serious bodily injury was reasonably certain to result." *Id.* (emphasis added). Furthermore, in *Alvarado*, the court of criminal appeals reversed an injury to a child conviction because the jury instructions did not require "a finding that she intended *or* knew serious bodily injury would result." 704 S.W.2d at 40 (emphasis added). The knowing *mens rea* has also been applied by the Fort Worth Court of Appeals in reviewing a conviction for injury to a child by omission. *See Patterson v. State*, 46 S.W.3d 294, 303 (Tex. App.—Fort Worth 2001, no pet.) (evidence is insufficient when "there is no evidence that appellant was aware with reasonable certainty that injury to the children would have been prevented had she acted"); *see also Kohler v. State*, 713 S.W.2d 141, 145 (Tex. App.—Corpus Christi 1986, pet. ref'd) (opinion on rehearing)

9

("We need not speculate on appellants' conscious objective or desire. It is sufficient that evidence shows that appellants were aware that the circumstances existed, and that their conduct would be reasonably certain to cause death.").

In light of *Dusek*, *Alvarado*, and *Patterson*, we hold that the evidence is sufficient to support Mr. Johnston's conviction for injury to a child by omission under section 22.04(a) of the penal code if the State proves *either* that Mr. Johnston intended to cause the injury through his omission *or* that he was aware that his omission was reasonably certain to cause the injury. This standard reflects the language of the statute which assigns equal criminal liability for either intentional or knowing conduct and is consistent with the statements made in more recent cases from the court of criminal appeals, this court, and other courts of appeals. To the extent that the standard articulated in *Wheeler* is inconsistent with this holding, we find that standard was overruled by the subsequent opinions in *Alvarado* and *Dusek*.[2]

We therefore consider whether the State presented sufficient evidence that it was Mr. Johnston's conscious objective or desire to cause serious bodily injury through his omissions or that Mr. Johnston was aware that his failure to provide medical care and fluids was reasonably certain

---

[2] It is likely that the focus on the intentional *mens rea* in *Wheeler* and *Beggs* stemmed from their citations to the indictments in those cases. *See Beggs v. State*, 597 S.W.2d 375, 377 (Tex. Crim. App. 1980); *Wheeler*, 952 S.W.2d at 604. In both cases, the indictment alleged that the defendant "intentionally and knowingly" caused the injury. *See Beggs*, 597 S.W.2d at 377; *Wheeler*, 952 S.W.2d at 604. The fact that an indictment alleges alternative *mens rea* conjunctively, however, does not mean that the State must prove both in order to obtain a conviction. We have previously held that the State is permitted to anticipate variances in the proof by pleading intentional and knowing *mens rea* in the conjunctive when the proof of either will support a guilty verdict. *See Belcher v. State*, 962 S.W.2d 653, 656 n.1 (Tex. App.—Austin 1998, no pet.) (citing *Zanghetti v. State*, 618 S.W.2d 383, 387-88 (Tex. Crim. App. 1981)).

to cause serious bodily injury. The State presented evidence that Mr. Johnston discussed C.T.'s deteriorating medical condition with his wife and decided not to take C.T. to the hospital for fear that his abuse would be discovered. Although this evidence leads to the conclusion that Mr. Johnston's objective in failing to provide medical care was to avoid detection rather than to inflict injury upon C.T., it also shows that Mr. Johnston was aware of C.T.'s dire medical condition and the need to take him to the hospital. C.T.'s sickly appearance, distended abdomen, and inability to hold himself up or hold down food and water for several days all provide ample evidence to support a jury's determination that Mr. Johnston was aware that the failure to provide medical care was reasonably certain to cause serious bodily injury to C.T. Viewing the evidence in the light most favorable to the prosecution, it is sufficient for a rational jury to find beyond a reasonable doubt that Mr. Johnston knowingly caused serious bodily injury to C.T. through his failure to provide medical care. *See Jackson*, 443 U.S. at 324. Nor do we find after a neutral review of the evidence that the evidence is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga*, 2004 Tex. Crim. App. LEXIS 668, at *20.

### *Causation*

Mr. Johnston next contends that the evidence was insufficient because C.T.'s injury was caused by Mr. Johnston's physical abuse, rather than his failure to provide medical care. Because injury to a child is a "result of conduct" offense, the State must prove that Mr. Johnston's failure to provide medical care caused a serious bodily injury. Because Mr. Johnston had assumed

11

care, custody, or control of C.T., he held a separate duty to ensure that C.T.'s injury was treated, regardless of its origin. *See* Tex. Pen Code Ann. § 22.04(b). To the extent that Mr. Johnston's failure to treat C.T.'s injury created a substantial risk of death above and beyond that sustained in the initial injury, Mr. Johnston was subject to criminal liability for the omission.

In *Dusek*, a neglected child was brought to the hospital with a broken leg. 978 S.W.2d at 131. This Court found the evidence insufficient to support a conviction for injury to a child by failing to provide medical care. *Id*. We explained:

> There also is no evidence that appellant failed to obtain medical treatment for Billy's broken leg or that any omission on appellant's part aggravated the seriousness of the injury. The State's medical witnesses did not testify that Billy's leg appeared to have been broken for an unusual period of time or otherwise suggest that treatment had been delayed, nor did they testify that Billy's recovery from the injury was in any way hindered by a delay in receiving medical care.

*Id*. By contrast, Mr. Johnston clearly delayed C.T.'s medical treatment for several days while C.T.'s health visibly deteriorated. When he was examined at the hospital, C.T.'s condition was described as "critical." Two experts testified that the delay in treating C.T.'s injuries resulted in a life threatening dehydration and buildup of stomach secretions. There was no contrary evidence presented indicating that C.T.'s injury would have been equally life threatening had he been provided timely medical attention or that C.T.'s condition was less severe than the State's witnesses described. We therefore conclude that there was legally and factually sufficient evidence to show that Mr. Johnston's failure to provide medical care caused C.T.'s serious bodily injury. *See Jackson*, 443 U.S. at 324; *Zuniga*, 2004 Tex. Crim. App. LEXIS 668, at *20. Because we conclude that there was

sufficient evidence to convict Mr. Johnston of injury to a child by failing to provide medical care, we need not reach Mr. Johnston's contention that the evidence was insufficient to prove that he failed to provide adequate food and liquids to C.T.

We overrule Mr. Johnston's first two issues.

**Deadly weapon findings**

In his remaining issues, Mr. Johnston challenges the legal and factual sufficiency of the evidence underlying the jury's findings that Mr. Johnston used a deadly weapon when he physically abused both children. He contends that the findings were based on the hypothetical testimony of medical experts, not the specific facts of the abuse episode. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); *Johnston v. State*, 115 S.W.3d 761, 763 (Tex. App.—Austin 2003, pet. granted). In order to establish the use of a deadly weapon during the commission of an offense, the State must show that the defendant used

> a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Tex. Pen. Code Ann. § 1.07(a)(17) (West 2003). Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes death, serious disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46). An alleged deadly weapon's capability of causing serious bodily injury or death in the manner of its use must be evaluated in light of the facts that actually existed when the felony was committed. *Rodriguez v.*

13

*State*, 31 S.W.3d 772, 779 (Tex. App.—Austin 2000), *aff'd*, 104 S.W.3d 87 (Tex. Crim. App. 2003).

The State need not prove that the defendant caused or even intended to cause death or serious bodily injury in order to justify a deadly weapon finding; rather the State must only prove that the actual use or intended use of the object was capable of causing death or serious bodily injury. *See Garcia v. State*, 92 S.W.3d 574, 575-76 (Tex. App.—Austin 2002, no pet.).

We recently reversed a deadly weapon finding in Mr. Johnston's separate conviction for injury to a child arising out of Mr. Johnston's inflicting a cigarette burn to the palm of C.T.'s hand. *Johnston*, 115 S.W.3d at 764. In that case, the State relied on expert testimony that the use of a lit cigarette could cause serious bodily injury in some hypothetical situations. *Id*. We explained, however, that the evidence introduced at trial demonstrated that Mr. Johnston only used the cigarette to make a single burn on C.T.'s hand and that the resulting injury was not serious. *Id*. We then concluded that the evidence was legally insufficient to support the deadly weapon finding:

> [T]he State offered no evidence that the appellant intended to use the cigarette in any other manner that would have been capable of causing serious bodily injury. The fact that appellant could have caused serious bodily injury if he had used, or intended to use, the cigarette in a way other than he actually did does not support a deadly weapon finding.

*Id*.; *see also McCain*, 22 S.W.3d at 503. As in our prior opinion, we will examine the evidence presented at trial regarding Mr. Johnston's actual use of his hands, a belt, and a hard surface in each deadly weapon finding to determine if they were used in a manner capable of causing death or serious bodily injury. *See* Tex. Pen. Code Ann. § 1.07(a)(17).

14

### *Mr. Johnston's use of his hands against A.S.*

Mr. Johnston was convicted of intentionally causing bodily injury to A.S. His wife Crystal Johnston described the abuse:

> I seen the Defendant, Ty Wayne Johnston, take [A.S.], when she would not read and obey him, spread her legs, hold them down, stand on top of her, put all force on her. Then I would see him take her, slap her in the face. He would also punch her, kick her, throw her across the floor.

Dr. Teresa Vasquez examined A.S. soon after the abuse was discovered. She testified that A.S. had bruising under both eyes, on her head, and throughout the rest of her body. Dr. Vasquez described a number of serious complications that could arise from the injuries A.S. sustained, but confirmed that A.S. did not suffer from them. In response to a series of hypothetical questions, Dr. Vasquez explained that a human hand can be used to strike a child with such force as to kill or cause serious bodily injury to a child of A.S.'s age. She also described how a blow from a hand to different areas of a child's body might cause death or serious bodily injury.

Dr. Vasquez's hypothetical testimony was coupled with uncontested evidence that Mr. Johnston used his hands to slap, punch, and throw a four-year-old child, and that this abuse caused bruising throughout A.S.'s body, including her head. In contrast to the testimony regarding the cigarette in *Johnston*, the actual use of the alleged deadly weapon was consistent with the expert's hypothetical testimony. Because the State presented evidence that Mr. Johnston actually used his hands in a manner that was capable of causing serious bodily injury or death to a four-year-old child, and there was no evidence to the contrary, we find the evidence legally and factually

15

sufficient to sustain the jury's deadly weapon finding and overrule Mr. Johnston's third and fourth issues. *See Jackson*, 443 U.S. at 324; *Zuniga*, 2004 Tex. Crim. App. LEXIS 668, at *20.

### *Mr. Johnston's use of his hands, hard surface, and belt against C.T.*

In his final issue, Mr. Johnston challenges the jury's finding that he used his hands, a belt, and a hard surface as a deadly weapon against C.T. in several incidents of abuse. He first points to the fact that the jury acquitted him on charges that he caused serious bodily injury by striking C.T. in the incident that caused the intestinal blockage and convicted only on the lesser included offense of causing bodily injury. Mr. Johnston contends that this verdict undermines the jury's conclusion that he possessed the specific intent to cause serious bodily injury or that he used his hands or a hard surface in a manner that was "likely" to cause death or serious bodily injury.[3] The statute, however, did not require the jury to find that Mr. Johnston either had the specific intent to cause bodily injury or that he in fact caused such injury. The inquiry is whether the actual use or intended use was capable of causing death or serious bodily injury. Tex. Pen. Code Ann. § 1.07(a)(17); *see also Garcia*, 92 S.W.3d at 575-76.

Here, there was evidence that Mr. Johnston picked up C.T. and repeatedly threw him to the floor, kicked him in the back, punched him in the stomach, and beat him with a belt. This abuse led to an internal injury that caused C.T. to be hospitalized for approximately three weeks.

---

[3] Mr. Johnston's use of the term "likely" misstates the current statutory definition of a deadly weapon. The historical common law definition of a deadly weapon did focus on whether an object's use was "likely to cause death or serious bodily injury." *Thomas v. State*, 821 S.W.2d 616, 617-18 (Tex. Crim. App. 1991). Since the adoption of the current penal code in 1974, however, the definition of a deadly weapon is solely governed by the statute, which focuses on whether a weapon is capable of causing death or serious bodily injury. *Id.* at 619-20.

16

Expert testimony confirmed that the injury was life threatening and was caused by the abuse. We conclude that a rational jury could find beyond a reasonable doubt that such treatment of a three-year-old boy was capable of causing death or serious bodily injury. *See Jackson*, 443 U.S. at 324. Furthermore, this evidence is neither so weak or the contrary evidence too strong to support a finding of guilt beyond a reasonable doubt. *See Zuniga*, 2004 Tex. Crim. App. LEXIS 668, at *20.

Mr. Johnston also contends that the State did not present sufficient evidence of his use of a deadly weapon in his beating C.T. with a belt and other beatings with his hands and a hard surface that resulted in only bruising. Citing the Texarkana Court of Appeals' opinion in *Kenny v. State*, he argues that evidence demonstrating that the use of a hand or hard surface *could* cause serious bodily injury is not sufficient to sustain a deadly weapon finding. *See* 750 S.W.2d 10, 11 (Tex. App.—Texarkana 1988, pet. ref'd). The cited language in *Kenny*, however, explained that general medical testimony that injuries could have created a substantial risk of death did not establish serious bodily injury to support an aggravated robbery conviction. *Id*. As we explained above, the State did not have to prove that Mr. Johnston actually caused serious bodily injury, only that his use of his hands, the belt, or the hard surface was capable of causing serious bodily injury.

In this case, the State presented Crystal Johnston's first-hand description of the manner in which Mr. Johnston beat C.T. with a belt, hit C.T. with his hands, and threw C.T. against hard surfaces. The jury also heard hypothetical expert testimony that the abuse of a three-year-old child in such a manner was capable of causing a variety of life threatening medical conditions and death. Viewing this evidence in the light most favorable to the prosecution, we conclude that a rational jury could have made a deadly weapon finding beyond a reasonable doubt. Furthermore,

17

because the State need only prove that an object was used in a manner capable of causing serious bodily injury to obtain a deadly weapon finding, the fact that the jury did not conclude that Mr. Johnston's abuse of C.T. actually caused serious bodily injury does not render the State's case so weak, or the contrary proof so strong, to support a finding of guilt beyond a reasonable doubt. *See Zuniga*, 2004 Tex. Crim. App. LEXIS 668, at *20. We therefore overrule Mr. Johnston's final issue.

## CONCLUSION

We find the evidence legally and factually sufficient to support the jury's deadly weapon findings and its conviction of Mr. Johnston for injury to a child causing serious bodily injury. Accordingly, we affirm all the judgments of conviction.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:  August 12, 2004

Publish

18