Opinion issued December 14, 2006






 











In The

Court of Appeals

For The

First District of Texas






NOS. 01-05-00694-CR

 01-05-00704-CR






WARREN EUGENE THOMPSON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 23rd District Court

Brazoria County, Texas

Trial Court Cause No. 46411 (Counts I & II)








O P I N I O N


 A jury convicted appellant, Warren Eugene Thompson, of injury to a child
(appellate cause number 01-05-00694), (1) a third degree felony, and sentenced him to
ten years' imprisonment. The jury also convicted appellant of injury to a child by
omission (appellate cause number 01-05-00704), (2) and sentenced him to 10 years'
community supervision. The jury made an affirmative finding that appellant used a
deadly weapon during the commission of both offenses. The jury also assessed a
$10,000 fine in each case. In four issues, appellant argues that (1) the evidence is
legally and factually insufficient to support his conviction for injury to a child by
omission; (2) the evidence is factually insufficient to support his conviction for injury
to a child; and (3) the trial court erred in refusing to charge the jury on the lesser
included offense of recklessly causing bodily injury to a child. 

 We affirm.

Facts

 At the time of the offense, appellant lived with his girlfriend, Sheila Crowder,
and her five-year-old daughter, R.C., in an apartment in Pearland, Texas. Around
5:00 p.m. on February 27, 2004, Ronald Weidman, an investigator for Child
Protective Services, arrived at appellant's apartment to investigate a call about R.C. 
Only appellant and R.C. were at home; Crowder was at work. Weidman explained
why he was there and asked to speak to R.C. in private; appellant consented. As
Weidman and R.C. walked to her bedroom, he noticed that the way she walked
indicated that she was in pain. 

 Once in R.C.'s bedroom, Weidman conducted a tape recorded interview. After
asking some preliminary questions, Weidman asked R.C. what had happened to her
feet. She initially stated, "I turned the water on, and it got hot. I got in the shower,
and it got hot." A few questions later, when Weidman asked whether appellant had
been involved, R.C. answered that he had held her feet under the water because she
had lied. Weidman then tried to take off her socks, but R.C. resisted, saying, "It
hurts - I hurt bad." Afraid that he might aggravate her injuries, Weidman decided to
wait and let someone else remove her socks. When Crowder arrived at the apartment,
she took off R.C.'s socks, and Weidman saw that R.C.'s feet had been "burned very
badly; and one of the blisters on one of the feet appeared not to have closed
completely." Weidman took some photographs of R.C.'s feet, which were later
admitted at trial.

 After speaking with his supervisors, Weidman asked Crowder to voluntarily
place R.C. with a friend or relative; Crowder agreed. That evening, R.C. was placed
with her grandmother, Mrs. Burkett. The next morning, Crowder, Burkett, and
Weidman took R.C. to the emergency room at the University of Texas Medical
Branch (UTMB) in Galveston where topical treatment was recommended. Up to that
point, according to Weidman, there was no evidence of any treatment in the
approximately two months since the burns had occurred, except socks being used as
bandages.

 Almost two weeks later, R.C. was taken to the ABC Clinic in Galveston, a
facility for examining children who may be the victims of abuse and neglect. Eva
Novak Blight, a nurse practitioner, performed a head-to-toe physical examination of
R.C., noting that R.C. had difficulty walking and was in pain while doing so. Scar
tissue had also begun to form, tightening the skin on the tops of R.C.'s feet and
pulling up her toes. Blight testified that, if the burns had been properly treated from
the beginning, the pulling of the toes would not have been a concern. While this is
something that can be corrected, according to Blight, it is "not a simple one-time done
deal," but "a serial procedure." Blight also noticed that the bottoms of R.C.'s feet had
not been burned, there were no splash marks, and there were lines of demarcation on
her feet--all signs of abuse. When Blight asked R.C. how her feet had been burned,
she responded, "My daddy held my feet in the water, and I burned my feet. I was
being bad." 

 Blight further testified that Burkett had told her that some wet-to-dry dressings
and burn ointment had been applied by R.C.'s mother. This treatment, according to
Blight, had not enhanced the injury, but had done nothing to aid the healing process;
the burns had required immediate emergency care. She also testified that, while socks
are used to hold dressings in places, they are not used alone. Gauze, or something
non-adherent that comes off easily without taking new skin with it, should have been
used for R.C.'s burns. When asked to look at the pictures Weidman had taken of
R.C.'s feet, Blight noticed that a significant piece of tissue was missing from the top
of her left foot, hypothesizing that any new skin that had formed kept getting pulled
off. 

 While at the ABC Clinic, Dr. Lukefahr also examined R.C., noting that the
bottoms of her feet had not been burned, there were no splash marks, and there were
sharp lines of demarcation on her feet. These were all signs of a forced immersion,
Dr. Lukefahr testified, because under normal circumstances, R.C. would have
reflexively tried to get her feet out of the water. The medical evidence, according to
Dr. Lukefahr, did not support the conclusion that R.C. had injured herself. Ultimately
concluding that the burns to R.C.'s feet were so severe that she required the care of
a burn specialist, he immediately made arrangements for her to be treated at Shriners
Burn Hospital in Galveston.

 A few days later, R.C. saw Dr. Sanford at Shriners Burn Hospital. After
examining her feet, he prescribed topical treatment for the open wound on her left
foot and several different treatments for scar management. When asked about the
lack of medical care for R.C. and whether this lack of care had influenced her
recovery, Dr. Sanford replied that skin grafting is recommended for wounds taking
longer than two weeks to heal. During his testimony, Dr. Sanford--also emphasizing
that the bottoms of R.C.'s feet were not burned, there were defined lines of
demarcation, and there were no splash marks--concluded that her case had "many of
the hallmarks of a forced immersion." Dr. Sanford further testified that at 120
degrees Fahrenheit--the maximum temperature of the water at appellant's
apartment--it would take approximately six and one-half minutes for a five-year-old
child, like R.C., to suffer third-degree burns. Upon seeing the pictures Weidman had
taken, Dr. Sanford noted "an area on the top of her left foot that [was] open and . . .
that was probably originally a full thickness burn . . . "--i.e., a third-degree burn.

 Weidman and C. Arnold, a detective in the Pearland Police Department, both
testified about appellant's explanation for the burns to R.C.'s feet. Weidman testified
that when he asked appellant how R.C. had burned her feet, appellant said that he had
gone into the bathroom and found her straddling the spigot with the hot water on. He
had then put her on the side of the tub and she burned her feet while sitting there as
the water rose. Appellant later told Detective Arnold that R.C. went into the bathtub
to prepare her water. When he later walked by, he saw her standing in the tub, near
the faucet, with her feet spread out to the edges of the tub. When appellant asked her
what was wrong, she answered that the water was hot. He then picked her up and
took her out of the tub, noticing that the skin on the top of her feet was peeling.

 At trial, appellant called Dr. Nicholas Edd, a psychologist, who testified that
the technique used to interview R.C. was flawed because the interview was rushed,
leaving little time for R.C. to process information, and many of Weidman's questions
were leading. "[F]aulty interview techniques," according to Dr. Edd, "can cause very
inaccurate recall and facilitate reports that are not valid."

Sufficiency of the Evidence Standard of Review

 When an appellant challenges both the legal and factual sufficiency of the
evidence, we must first determine whether the evidence was legally sufficient to
support the verdict. Harmond v. State, 960 S.W.2d 404, 406 (Tex. App.--Houston
[1st Dist.] 1998, no pet.).

 Legal Sufficiency

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. 
Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000). Although our analysis considers all the
evidence presented at trial, we may not re-weigh the evidence and substitute our
judgment for that of the fact finder. King, 29 S.W.3d at 562.

 Factual Sufficiency

 We begin the factual sufficiency review with the presumption that the evidence
supporting the jury's verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). We view all of the evidence in a neutral light, (3) and we
will set the verdict aside only if the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or the conflicting evidence is against the great weight
and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 10-11 (Tex.
Crim. App. 2000). Regarding the second basis for a finding of factual insufficiency,
"an appellate court must . . . be able to say, with some objective basis in the record,
that the great weight and preponderance of the (albeit legally sufficient) evidence
contradicts the jury's verdict before [the court] is justified in exercising its appellate
fact jurisdiction to order a new trial." Watson v. State, No. PD-469-05, 2006 WL
2956272, at *10 (Tex. Crim. App. Oct. 18, 2006) (emphasis omitted). Our evaluation
may not intrude upon the fact finder's role as the sole judge of the weight and
credibility accorded any witness's testimony. Cain v. State, 958 S.W.2d 404, 407 n.5
(Tex. Crim. App. 1997). What weight to be given contradictory testimonial evidence
is within the sole province of the fact finder because it turns on an evaluation of
credibility and demeanor. Id. at 407-09. The fact finder may choose to believe all,
some, or none of the testimony presented. Hughes v. State, 897 S.W.2d 285, 289
(Tex. Crim. App. 1994). We must defer appropriately to the fact finder to avoid
substituting our judgment for its judgment. See Johnson, 23 S.W.3d at 12. For a
review of factual sufficiency, we must consider the most important evidence that
appellant claims undermines the verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003).

Injury to a Child: The Law

 Under the Texas Penal Code, a person commits an offense if, by his act, he
intentionally, knowingly, recklessly, or with criminal negligence causes bodily injury
to a child. Tex. Pen. Code. Ann. § 22.04(a)(3). A person also commits an offense
if, by his omission, he intentionally, knowingly, recklessly, or with criminal
negligence causes bodily injury to a child, and the person either (1) has a legal or
statutory duty to act or (2) has assumed care, custody, or control of the child. Id.
§ 22.04(a)(3), (b). A person intentionally causes a result of his conduct when it is his
conscious desire to cause that result. Id. § 6.03(a) (Vernon 2003). A person
knowingly causes a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result. Id. § 6.03(b) (Vernon 2003). A person
recklessly causes a result of his conduct when he is aware but consciously disregards
a substantial and unjustifiable risk that the result will occur. Id. § 6.03(c) (Vernon
2003). A bodily injury is defined as "physical pain, illness, or any impairment of
physical condition." Id. § 1.07(a)(8) (Vernon Supp. 2006).

 Injury to a child, either by omission or by overt action, is a "result of conduct"
offense. Johnston v. State, 150 S.W.3d 630, 634 (Tex. App.--Austin 2004, no pet.)
(citing Alvarado v. State, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985)). This means
that the culpable mental state relates not to the nature or circumstances surrounding
the charged conduct, but to the result of that conduct. Patterson v. State, 46 S.W.3d
294, 301 (Tex. App.--Fort Worth 2001, no pet.) (citing Haggins v. State, 785 S.W.2d
827, 828 (Tex. Crim. App. 1990)). In other words, the accused must have acted with
the requisite culpable mental state to effect the result. See id. (citing Alvarado, 704
S.W.2d at 39).

Count One: Injury by Act

 In his third issue, appellant argues that the evidence is factually insufficient to
support his conviction for injury to a child by holding R.C.'s feet under water. 

 The first count of the indictment charged appellant with "intentionally or
knowingly caus[ing] serious bodily injury to [R.C.], a child . . ., by holding [R.C.] in
hot water thereby causing burns to [her] feet." The jury found appellant not guilty of
this charge, but did find him guilty of the lesser included offense of injury to a child,
a third degree (4) rather than a first degree felony, (5) as charged in the indictment. 
Applying the law to the convicted offense, the State was required to prove that, by
holding R.C.'s feet in the hot water, appellant consciously desired to cause R.C.
physical pain, illness, or an impairment of her physical condition, or that appellant
was aware that doing so was reasonably certain to cause R.C. physical pain, illness,
or an impairment of her physical condition. See Tex. Pen. Code Ann. §§ 1.07(a)(8),
6.03(a)-(b), 22.04(a)(3); Dusek v. State, 978 S.W.2d 129, 133 (Tex. App.--Austin
1998, pet. ref'd).

 At trial, Weidman testified that appellant had said that R.C.'s feet were burned
while she was sitting on the side of the tub as the water grew higher. Appellant also
presented expert testimony that the technique used to interview R.C. was flawed
because the interview was rushed, leaving little time for R.C. to process the questions,
and many of the questions were leading. Appellant argues that the jury's verdict was
not rationally justified. We disagree. 

 As stated above, because a jury is free to believe some, all or none of the
testimony of a witness, a jury's decision is not manifestly unjust merely because it has
resolved conflicting views of evidence in favor of the State. See Cain, 958 S.W.2d
at 409-10. Here, the jury was free to discredit the expert testimony and believe
R.C.'s taped statement that appellant had held her feet in the hot water. Furthermore,
the State presented significant evidence at trial undermining appellant's explanation
for how R.C. burned her feet. Dr. Lukefahr testified that the medical evidence did not
support the conclusion that R.C. had injured herself. Under normal circumstances,
she would have reflexively tried to get her feet out of the water. Here, however, both
feet had symmetrical lines of demarcation, the bottoms of her feet were not burned,
and there were no splash marks--all consistent with a forced immersion. Dr. Sanford
further testified that, at 120 degrees Fahrenheit--the maximum temperature of the
water at appellant's apartment--it would take approximately six and one-half minutes
for a five-year-old, like R.C., to suffer third-degree burns.

 Thus, after neutrally examining all the evidence, (6) we hold that the proof of guilt
was not so weak that the verdict is clearly wrong or manifestly unjust nor is the
verdict against the great weight and preponderance of the evidence. See Johnson, 23
S.W.3d at 10-11.

 We overrule appellant's third issue. 

Count Two: Injury by Omission

 In his first two issues, appellant argues that the evidence presented at trial was
legally and factually insufficient to prove that he intended to injure R.C. by his
omission or that he was aware that his omission would cause her injury.

 The second count of the indictment charged appellant with "intentionally or
knowingly, by omission, caus[ing] bodily injury to [R.C.], a child . . ., by failing to
provide her proper medical care." Applying the law above to count two of the
indictment, the State had to prove more than that appellant failed to provide medical
care for the burns to R.C.'s feet. See Thornton v. State, 994 S.W.2d 845, 849 (Tex.
App.--Fort Worth 1999, pet. ref'd); see also Dusek, 978 S.W.2d at 133. The State
was required to prove that, by failing to provide proper medical care for her burns,
appellant consciously desired to cause R.C. physical pain, illness, or an impairment
of her physical condition, or that appellant was aware that a lack of proper medical
care was reasonably certain to cause R.C. physical pain, illness, or an impairment of
her physical condition. See Tex. Pen. Code Ann. §§ 1.07(a)(8), 6.03(a)-(b),
22.04(a)(3), (b); Dusek, 978 S.W.2d at 133.

 Legal Sufficiency

 Relying on two Austin Court of Appeals decisions, appellant argues that
because there was no evidence that appellant (1) failed to heed warnings that R.C.
needed medical attention, (2) made R.C. put on shoes over her socks, thereby
exaggerating or increasing her injury, or (3) did not take R.C. to a doctor because he
was hiding abuse, the evidence is legally insufficient to support the jury's omission
verdict. See Johnston, 150 S.W.3d at 636-37; Dusek, 978 S.W.2d at 133. Rather,
appellant argues that the evidence shows only that he knew or should have known
that R.C. was in pain and that she needed, and should have received, medical
attention.

 In Dusek, the defendant was found guilty of intentionally or knowingly causing
serious bodily injury to a child for failing to get medical treatment for her son's
broken leg. Dusek, 978 S.W.2d at 133. The court found the evidence to be
insufficient, however, because there was no evidence that the defendant's failure to
seek medical care for her son caused his broken leg or aggravated the seriousness of
the injury: no one testified at trial that his leg had been broken for an unusual amount
of time or that treatment had been delayed, or that his recovery had been hindered by
a delay in receiving medical care. Id. 

 While it is true that a lack of medical care did not cause the burns on R.C.'s
feet, significant evidence showed that a forcible immersion in the hot water did and
that the two-month delay in getting R.C. proper medical care aggravated her injury
and hindered her recovery. See id. Blight testified that when she examined R.C.,
approximately two and one-half months after the initial injury, scar tissue had already
begun to form on R.C.'s feet and pull up her toes, which would not have happened
if she had received immediate medical care. While this pulling of the toes can be
corrected, according to Blight, it is "not a simple one-time done deal," but "a serial
procedure." Furthermore, Dr. Sanford testified that skin grafting is recommended for
wounds taking longer than two weeks to heal. Two months after her initial injury,
however, R.C. still had an open wound on the top of her left foot.

 In Johnston, the defendant was also found guilty of intentionally or knowingly
causing serious bodily injury to a child for failing to get medical treatment for his
step-son after physically abusing him. Johnston, 150 S.W.3d at 631, 633. At trial,
the State presented evidence that he had discussed his step-son's deteriorating
medical condition with his wife but decided not to take him to the hospital, fearing
that his abuse of the boy would be discovered. Id. at 636. The Court noted that,
although this evidence leads to the conclusion that the defendant's intent in not
getting his step-son medical care was to hide the abuse rather than to cause him harm,
it also showed that the defendant was aware of his step-son's serious medical
condition and the need to take him to the hospital. Id. The court cited this and the
boy's numerous symptoms as evidence supporting the jury's finding that the
defendant was aware that a lack of medical care was reasonably certain to cause
serious bodily injury to his step-son. Id. at 636-37. This evidence, the court
concluded, was sufficient to support the verdict. Id.

 While it is also true that the State presented no evidence that appellant was
trying to hide abuse, appellant admits in his brief that the evidence shows that he
knew or should have known that R.C. was in pain and that she needed, and should
have received, medical attention. See id. at 633. Furthermore, without medical care,
R.C. continued to feel pain in her everyday activities. When Weidman tried to
remove her socks during their interview, R.C. resisted, saying, "It hurts - I hurt bad,"
and both Weidman and Blight testified that simply walking appeared to be painful for
R.C.

 We conclude, based on the evidence presented at trial, that a jury could have
found beyond a reasonable doubt that appellant was aware that failing to provide R.C.
with proper medical care was reasonably certain to cause R.C. physical pain, illness,
or an impairment of her physical condition. See Tex. Pen. Code Ann. §§ 1.07(a)(8),
6.03(a)-(b), 22.04(a)(3), (b); Dusek, 978 S.W.2d at 133. 

 We overrule appellant's first issue. Factual Sufficiency

 For a review of factual sufficiency, we must consider the most important
evidence that the appellant claims undermines the jury's verdict. Sims, 99 S.W.3d at
603. Appellant argues that the combined testimony of the State's four witnesses
shows that R.C.'s injuries were not serious--as found by the jury--and that he, along
with R.C.'s mother, cared for those injuries. The record contains substantial
evidence, however, that R.C.'s injuries were serious and that the care given was not
proper. Blight testified that any wet-to-dry dressings and burn ointment that had been
applied, while not enhancing the injury, had done nothing to aid the healing process;
the burns had required immediate emergency care. She also testified that, while socks
are used to hold dressings in place, they are not used alone; gauze or something non-adherent, which comes off easily without taking new skin with it, should have been
used. Dr. Lukefahr, after seeing R.C.'s two-and-one-half-month-old injuries, felt
R.C. needed to be under the care of a burn specialist and immediately contacted the
Shriners Burn Hospital in Galveston for treatment. At least two months after her
injuries, R.C. still had an open wound on her left foot and scar tissue had already
begun to develop, which tightened the skin on the top of her feet and pulled up her
toes. With appropriate medical treatment, this additional injury would not have been
a concern.

 The jury has the sole province to decide what weight is to be given to
contradictory testimony as it turns on an evaluation of credibility and demeanor. 
Cain, 958 S.W.2d at 408-09. A jury is free to believe any or all of the testimony of
the State's witnesses. Hughes, 897 S.W.2d at 289. The jury's decision, therefore, is
not manifestly unjust merely because the jury resolved conflicting views of evidence
in favor of the State. Cain, 958 S.W.2d at 410. Here, the jury was free to discredit
the evidence that appellant and her mother cared for R.C. and that her injuries were
not serious.

 Thus, after neutrally examining all the evidence, (7) we find that the proof of guilt
was not so weak that the verdict is clearly wrong or manifestly unjust nor is the
verdict against the great weight and preponderance of the evidence. See Johnson, 23
S.W.3d at 10-11.

 We overrule appellant's second issue.

Lesser-Included Offense

 In his fourth issue, appellant complains that the trial court erred when it refused
to charge the jury on the lesser included offense of recklessly causing bodily injury
to a child.

 To preserve error relating to a jury charge, there must either be an objection or
a requested charge. Starks v. State, 127 S.W.3d 127, 133 (Tex. App.--Houston [1st
Dist.] 2003, pet. dism'd). Here, appellant did not submit a jury charge containing an
instruction on the lesser included offense. Accordingly, to preserve any error in
relation to the jury charge, appellant was required to make a specific objection to the
trial court's charge. See id. (citing Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon
1999)). To preserve error for appellate review, a timely and reasonably specific
objection, followed by an adverse ruling, is required. Tex. R. App. P. 33.1(a). 
Additionally, if the argument presented on appeal is not the same as the objection
raised at trial, no error is preserved and review is waived. Butler v. State, 872 S.W.2d
227, 236 (Tex. Crim. App. 1994); Sandoval v. State, 52 S.W. 3d 851, 855 (Tex.
App.--Houston [1st Dist.] 2001, pet. ref'd).

 At trial, appellant objected to the court's jury charge, arguing that, "[i]f the jury
so found that he may not have known that the injury would occur, then the thought
process would be left that it was a reckless act." In other words, appellant was
arguing that the court should include a charge on recklessness because the jury could
conclude that appellant (1) held R.C.'s feet under the water, aware of, but consciously
disregarding the risk of her feet getting burned and (2) failed to seek medical care for
R.C.'s burns, aware of, but consciously disregarding the risk of further injury. See
Tex. Pen. Code. Ann. § 6.03(c). On appeal, however, appellant argues only that the
evidence that he, after finding R.C. standing in the tub, then sat her down on the side
of the tub, supports a finding of recklessness. Consequently, appellant's objection
to the jury charge does not match his fourth issue on appeal. See Sandoval, 52
S.W.3d at 855; Butler, 872 S.W.2d at 236. His argument, therefore, is not preserved
for review. See Sandoval, 52 S.W.3d at 855; Butler, 872 S.W.2d at 236.

 Although appellant failed to preserve this argument for review, we may still
reverse if the record shows that the trial court's failure to instruct the jury on
recklessness caused "egregious harm" to the appellant. See Bluitt v. State, 137
S.W.3d 51, 53 (Tex. Crim. App. 2004) (holding an appellant may raise unobjected-to
jury charge error on appeal, but may not obtain reversal for such error unless it
resulted in "egregious harm"); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1984); Martinez v. State, 190 S.W.3d 254, 258 (Tex. App.--Houston [1st Dist.]
2006, pet. ref'd). Thus, we review an alleged jury charge error by considering
(1) whether error existed in the charge and (2) whether sufficient harm resulted from
the error to compel reversal. See Martinez, 190 S.W.3d at 258 (citing Posey v. State,
966 S.W.2d 57, 60, 75 n.5 (Tex. Crim. App. 1998)).

 A jury must be charged on a lesser included offense if (1) the requested charge
is a lesser included offense of the offense charged and (2) some evidence exists in the
record that would permit a rational jury to find that if the defendant is guilty, he is
guilty only of the lesser offense. Irving v. State, 176 S.W.3d 842, 845 (Tex. Crim.
App. 2005). An offense is a lesser included offense if "it is established by proof of
the same or less than all the facts required to establish the commission of the offense
charged." See Tex. Code Crim. Proc. Ann. art. 37.09(1) (Vernon 2006) (emphasis
added). In other words, the conduct alleged by the appellant in support of the
instruction on the lesser included offense must be included within the conduct
charged. Hayward v. State, 158 S.W.3d 476, 480 (Tex. Crim. App. 2005).

 Under the Texas Penal Code, a person commits an offense if, by his act, he
intentionally, knowingly, recklessly, or with criminal negligence causes serious
bodily injury to a child. Tex. Pen. Code Ann. § 22.04(a)(1) (Vernon Supp. 2006). 
Appellant argues that because the offense encompasses all culpable mental states,
recklessly causing bodily injury to a child is a lesser included offense of both
intentionally and knowingly causing bodily injury to a child. See Tex. Code Crim.
Proc. Ann. art. 37.09(3) (Vernon 2006); see also Moore v. State, 154 S.W.3d 703,
711 (Tex. App.--Fort Worth 2004, pet. ref'd). What appellant fails to recognize,
however, is that while recklessly causing bodily injury to a child may be a lesser
included offense of intentionally and knowingly doing so, he is asking for a lesser
included offense instruction based on facts not required to establish the commission
of the offense charged. See Irving, 176 S.W.3d at 845; Hayward, 158 S.W.3d at 480. 
 The first count of the indictment alleged that appellant intentionally or
knowingly caused serious bodily injury to R.C. by holding her feet in hot water. On
appeal, however, appellant argues that the evidence that he placed R.C. on the side
of the tub and that she burned her feet as the water filled the tub supports a
recklessness charge. Because the conduct constituting the offense charged is
different than the conduct constituting the offense of the requested charge, recklessly
injuring R.C. is not a lesser included offense of intentionally or knowingly doing so. 
See Irving, 176 S.W.3d at 846. Proof that appellant placed R.C. on the side of the tub
is not required to prove that he injured R.C. by holding her feet in hot water. Thus,
because the conduct alleged by appellant is not included within the conduct charged,
the trial court was not required to instruct the jury on recklessness. See Hayward, 158
S.W.3d at 480. Accordingly, the jury charge contained no errors, and we need not
conduct a harm analysis. See Martinez, 190 S.W.3d at 258 (citing Posey, 966 S.W.2d
at 60, 75 n.5).

 We overrule appellant's fourth issue.







Conclusion

 We affirm the judgment of the trial court.




 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Hanks.

Publish. Tex. R. App. P. 47.2(b).
1. Tex. Pen. Code Ann. § 22.04(a)(3) (Vernon Supp. 2006).
2. Id. § 22.04(a)(3), (b) (Vernon Supp. 2006).
3. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999).
4. Tex. Pen. Code Ann. § 22.04(f) (Vernon Supp. 2006).
5. Id. § 22.04(e) (Vernon Supp. 2006).
6. See Ladd, 3 S.W.3d at 557.
7. See Ladd, 3 S.W.3d at 557.