# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00699-CR

**Richard Fredrick Lowrey, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT
## NO. B-09-10-28-SA, HONORABLE BEN WOODWARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Richard Fredrick Lowrey was convicted in a bench trial of injury to a child causing serious mental deficiency, impairment, or injury. *See* Tex. Penal Code Ann. § 22.04(e) (West Supp. 2011). The trial court sentenced him to 35 years in prison. On appeal, Lowrey contends that the evidence was legally insufficient to support findings that the child's injury was caused by anyone, that Lowrey caused the injury, and that he intentionally or knowingly caused the injury. We will affirm the judgment.

## BACKGROUND

This case concerns a sequence of baffling events that culminated in a serious injury to a two-year-old child, Dillon Curry. Lowrey had a relationship with Dillon's mother, Deborah Barrera, for over a year before Dillon's injury. At first, she was living with her parents and Lowrey spent nights there. In January 2009, Lowrey and Barrera stayed out late while Barrera's

mother babysat Dillon. When they came home, Barrera fell asleep. Barrera testified that Lowrey told her that, while she was sleeping, he put Dillon in bed with her because Dillon was crying. When Barrera went to work, she put Dillon in bed with her mother. Barrera testified that, when she returned from work, Dillon had what appeared to be a rash on his face (later identified as petechiae, or broken capillaries), had a watery bruise on top of his head, and was missing some hair. Barrera's mother did not know what happened to Dillon. Barrera's mother decided, however, that she did not want Lowrey spending the night at her house any more. Dillon had no more similar mysterious incidents until Barrera moved in with Lowrey about a month later.

Dillon had three more unexplained events after he and Barrera moved in with Lowrey in 2009. On one occasion, Barrera put Dillon to bed and watched a movie with Lowrey until she fell asleep. Barrera awoke to hearing Dillon crying as he lay near the front door. She found a rash on Dillon's face and a bruise on his ear. The child was a little disoriented and took a few seconds to respond. Lowrey was in the bathroom when Barrera found Dillon. On the next occasion, Barrera was taking a shower in the morning when she heard a crash. Barrera found Dillon disoriented underneath his hobby horse. He did not remember how he got there. Lowrey was in bed when she found Dillon. In response to the report of these incidents, Dillon's nurse gave Barrera a pamphlet on sleepwalking and suggested Dillon take Tylenol. In the third incident, Barrera awoke to find Dillon crying at the foot of her bed. He had petechiae on his face and, again, did not know how he had gotten to her bedroom. Lowrey was in the bathroom when Barrera found Dillon.

On May 23, 2009, Lowrey awakened Barrera at about 2 a.m. to ask if she wanted to smoke a cigarette. Although Lowrey testified that the shared late-night smoke break was a regular

event, Barrera disagreed. Lowrey went to check on Dillon, then yelled and told her that Dillon had a pillow on his head. Dillon was limp and not breathing. Barrera revived Dillon and they took him to the emergency room. Barrera testified that she noticed petechiae on Dillon's face and a bruise on his chin, but could not recall when she first saw them. The treating physician at the San Angelo hospital did not report any discoloration on Dillon's face, but the doctors in Fort Worth where Dillon was transferred did. Doctors in Fort Worth testified that, although suffocation can occur through many means, the petechiae, the chin bruise, the scrape on his jaw line, and the lack of any other medical cause indicated that Dillon was intentionally suffocated by someone. Oxygen deprivation left Dillon with the mentality of a six-week-old child. He is a quadriplegic, and must be fed through a stomach tube.

Barrera testified that she had never seen Lowrey hurt her son. She said that Dillon was a good kid, not one who typically upset her or Lowrey. She agreed that Lowrey deferred to her to discipline Dillon. She never saw Lowrey lose his temper around Dillon, and both she and Lowrey denied hurting Dillon. Lowrey testified that he had never seen Barrera hurt Dillon. Barrera nevertheless concluded that Lowrey had hurt her son.

The trial court found that Lowrey caused Dillon's injuries.

## STANDARD OF REVIEW

Lowrey contends that the evidence is legally insufficient to support his conviction. In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found

3

the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We must defer to the trier of fact's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13 (citing *Jackson*, 443 U.S. at 318-19). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.*

## DISCUSSION

Lowrey contends that the evidence was legally insufficient to prove that the child's injury was caused by anyone, that Lowrey caused the injury, and that he intentionally or knowingly caused the injury. There is no eyewitness, video, or physical evidence directly linking Lowrey to the crime. The evidence is circumstantial and inferential.

Two doctors who specialize in examining abused children testified that they believed Dillon was intentionally injured. Dr. Jamye Coffman examined Dillon and concluded that he was asphyxiated or suffocated. She based her decision on the petechiae on his face, the bruising on his chin, and the scrape on his jaw in conjunction with the absence of other medical causes for his condition. She also considered the history of repeated, similar episodes. Dr. James Lukefahr reached a similar conclusion after reviewing the medical records. He opined that Dillon's injuries were caused by something outside his body that deprived him of oxygen for several minutes. He stated that "an intentional injury was very highly likely to have caused Dillon's brain injury."

4

Dillon's personal physician testified that Dillon had been a healthy, playful, active child with normal growth and development. There was some testimony regarding the fact that medical science is evolving, but there was no direct contradiction of the doctors' opinions. Viewing the record in the light most favorable to the verdict, we conclude that legally sufficient evidence supports the conclusion that Dillon's injuries were caused by someone.

The finding that Lowrey caused the injury is based on inference. Lowrey and Barrera were the only two people known to be present when Dillon was seriously injured. They were also present in each of the previous incidents in which Dillon was found disoriented in unexplained locations with petechiae. Both Lowrey and Barrera denied hurting Dillon, and Lowrey rejected the idea that Barrera hurt Dillon. Barrera testified, however, that she believed Lowrey hurt Dillon. Barrera said that Dillon had not woken up disoriented with petechiae on his face before Lowrey started staying with her and did not have the marks after Lowrey moved out. The child had the marks only when Lowrey stayed with them overnight, then began having them again after Barrera and the child moved in with Lowrey. In each of the three relatively minor incidents that occurred in the apartment, Barrera was either asleep or in the bathroom when Dillon somehow got out of bed, moved to another place, and awoke disoriented with petechiae on his face. Lowrey was in the same residence but not in the room with her when Barrera was alerted to Dillon's distress on each of these occasions, including the May 23 incident that left Dillon seriously injured. The trial court observed the witnesses and their demeanor. The court heard Lowrey's testimony that the couple made a habit of shared, late-night smoke breaks, like the one that occurred on the night Dillon was injured, and Barrera's conflicting testimony that, although Lowrey often smoked at night, he did not usually wake

5

her up to join him. Although there was no direct evidence that Lowrey injured Dillon, we conclude that, considering all of the evidence in the light most favorable to the court's verdict and reasonable inferences therefrom, a rational fact finder could have found beyond a reasonable doubt that Lowrey inflicted Dillon's injuries.

Similarly, we conclude that the evidence is legally sufficient to support the finding that Lowrey inflicted the injury intentionally or knowingly. A person acts intentionally when "it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. § 6.03(a) (West 2011). A person acts knowingly when he is aware of the nature of his conduct or that the circumstances exist or when he is aware that his conduct is reasonably certain to cause the result. *Id*. § 6.03(b). Injury to a child, either by omission or by overt action, is a "result of conduct" offense. *Johnston v. State*, 150 S.W.3d 630, 634 (Tex. App.—Austin 2004, no pet.) (citing *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985)). This means that the culpable mental state relates not to the nature or circumstances surrounding the charged conduct, but to the result of that conduct. *Patterson v. State*, 46 S.W.3d 294, 301 (Tex. App.—Fort Worth 2001, no pet.). Dr. Lukefahr testified that, to cause Dillon's massive brain injury, the suffocation must have lasted for several minutes and that an intentional injury was "very highly likely" to have caused Dillon's brain injury. The duration of smothering necessary to cause suffocation weighs against finding an accidental cause. Lowrey argues that his waking Barrera and instructing her to resuscitate Dillon is inconsistent with intentionally injuring Dillon. He argues that, even if we assume that he was responsible for the previous incidents, those would have shown him that the results of temporary suffocation were relatively mild, thus making him unaware that a subsequent suffocation was

6

reasonably certain to cause massive brain damage. Evidence showed, however, that Lowery was a certified early childhood teacher who had also worked in a health club and in an assisted living facility. The trial court could reasonably infer that a person with Lowrey's background would know that cutting off Dillon's air supply for several minutes was reasonably certain to cause serious injury, regardless of the comparatively mild results of the previous incidents.

## CONCLUSION

We conclude that legally sufficient evidence supports the trial court's findings as to each issue challenged on appeal. We affirm the judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Filed: August 3, 2012

Affirmed

Do Not Publish