Affirmed and Opinion filed March 27, 2007








Affirmed and Opinion filed March 27, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00589-CR

____________

 

JEFFERY TRAMONE DOBBINS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause No. 1047396

 



 

O P I N I O N








Appellant, Jeffery Tramone Dobbins, appeals from his
conviction for aggravated assault on a public servant.  At trial, the State
presented evidence that appellant drove his vehicle at an off-duty deputy
constable.  The jury found appellant guilty and assessed punishment at eight
years= imprisonment.  In
his first three issues, appellant contends that the evidence was legally and
factually insufficient to prove that he (1) acted intentionally or knowingly,
(2) threatened the deputy, or (3) used a deadly weapon.  In his fourth issue,
appellant contends that the trial court erred in refusing to instruct the jury
on the lesser included offense of simple assault.  We affirm.

I.  Background

The only witness called during the guilt/innocence phase of
trial was Harris County Deputy Constable D.B. Vest.  Deputy Vest testified that
on November 16, 2005, he was working off-duty security at a restaurant while
dressed in uniform.  At around 1:30 to 2:00 p.m., Vest was in the restaurant
parking lot when he observed a green Buick, which he did not recognize, enter
and drive to an area behind the restaurant where usually only employees
parked.  The vehicle backed into a parking space beside a gold Suburban.

As Vest exited his own vehicle, he could hear a car alarm
sounding.[1] 
He began walking toward the Suburban.  Appellant appeared, spotted Deputy Vest,
then quickly disappeared behind the Suburban.  Shortly thereafter, the Buick
came out of its parking space headed toward Vest, with appellant driving and
another man in the passenger=s seat.  Vest held up his hand and asked
appellant to stop.  The vehicle stopped about one to one-and-a-half car lengths
from Vest.  Vest then proceeded Aaround to the
driver=s side,@ and the vehicle
moved forward, hitting Vest and lifting him onto the hood.[2]








Vest said that when the vehicle had first stopped, it was
clear that appellant saw him standing there.  When asked how fast the vehicle
was going when it moved toward him the second time, Vest said it was traveling A[a]nywhere from
five to eight miles, maybe ten miles, tops.@[3]  He also said
that there was plenty of room for appellant to have gone around him.  After
hitting Vest, the vehicle continued to travel forward while Vest gripped the
edge of the hood where it meets the windshield.  He stated that his feet were
rubbing the vehicle=s grill, so that he was completely on top
of the hood.  This brought him face-to-face with appellant.

Vest said that he wondered if he was going to die, and he
realized that if he tried to get off the hood, the vehicle might run over him. 
He pulled his pistol out and repeatedly yelled at appellant to stop the
vehicle.  He also managed to call on his radio for assistance.  At some point,
the passenger began saying that he A[didn=t] want anything
to do with it.@  Finally, the passenger reached over and put the
vehicle in park, causing it to stop.[4] 
The passenger then exited, and Vest got off the hood and ordered the passenger
to the ground.  Once the passenger obeyed, Vest turned back to appellant and
ordered him out of the vehicle.  Instead, appellant remained in the vehicle,
backed into a parking space, then drove out of the parking lot.  Subsequently,
Vest was given the license plate number of appellant=s vehicle by a
bystander and later identified appellant from his driver=s license
photograph.

Vest additionally testified that he felt threatened when
appellant drove at him and that he suffered a few bruises on his shin from the
incident.  He also said that the incident could have been a lot worse.  He
opined that a motor vehicle used in that manner was a deadly weapon.  On
cross-examination, Vest acknowledged that although it felt like he was on top
of the hood Aforever,@ he could have
just been up there Amomentarily.@  He could not say
exactly how long he was on the hood.

II.  Sufficiency of the Evidence








In his first three issues, appellant contends that the
evidence was legally and factually insufficient to support his conviction.  In
considering these issues, we utilize the normal standards of review.  See
King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (legal sufficiency
standards); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)
(factual sufficiency standards).  Appellant was charged with aggravated assault
on a public servant.  As charged in the indictment, a person commits this
offense when he or she intentionally or knowingly threatens a person the actor
knows is a public servant with imminent bodily injury, while the public servant
is lawfully discharging an official duty, and the person uses or exhibits a
deadly weapon during the commission of the assault.  Tex. Penal Code Ann. ' 22.02(a)(2),
(b)(2) (Vernon Supp. 2005); see also Dunklin v. State, 194 S.W.3d 14,
21-22 (Tex. App.CTyler 2006, no pet.).  As stated,
appellant attacks the legal and factual sufficiency of the evidence to prove
three elements of the offense, namely that he (1) acted intentionally or
knowingly; (2) threatened Vest; and (3) used or exhibited a deadly weapon
during commission of the assault.  We address each in turn.[5]

A.  Mental State

In his first issue, appellant contends that the evidence
was legally and factually insufficient to prove that he intentionally or
knowingly threatened Deputy Vest.  Under the Penal Code, A[a] person acts
intentionally . . . with respect to the nature of his conduct or to a result of
his conduct when it is his conscious objective or desire to engage in the
conduct or cause the result.@  Tex.
Penal Code Ann. ' 6.03(a).  Furthermore, 

[a] person acts knowingly, or with
knowledge, with respect to the nature of his conduct or to circumstances
surrounding his conduct when he is aware of the nature of his conduct or that
the circumstances exist.  A person acts knowingly, or with knowledge, with
respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.

Id. ' 6.03(b).  A
defendant=s intent or knowledge is a question of fact to be
determined from the totality of the circumstances.  See Smith v. State,
965 S.W.2d 509, 513 (Tex. Crim. App. 1998).








Appellant first asserts that in this case Athe usual
indicators of intent or knowledge are absent@ because there was
no evidence of his speaking any threatening words or making any particular
gestures.  However, evidence of threatening language or gestures is not
required to prove a defendant=s knowledge or intent; the jury may infer
the existence of either mental state from any facts tending to prove its
existence, including the acts, words, and conduct of the accused.  See Hart
v. State, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

Appellant next argues that there was no evidence that he Araced the engine,@ Apeeled out,@ or otherwise rapidly
accelerated toward Vest.  He also contends that there is no evidence that he
actually saw Vest in front of the vehicle when he drove forward, emphasizing
Vest=s comment that he
(Vest) was proceeding Aaround to the driver=s side@ when the vehicle
moved forward and hit him.  Appellant concludes that at most the evidence shows
his desire to leave the parking lot and his recklessness or negligence in doing
so.

As discussed above, Vest testified that appellant initially
drove directly at him out of the parking space and stopped only when Vest put
up his hand and asked him to stop.  That is strong evidence that appellant did
in fact see Vest in front of the vehicle at that point.  Vest further testified
that when he proceeded to the driver=s sideCor, as he stated
later in his testimony, AI made my way up to the vehicle and I
was going to come around to the driver=s side@Cthe vehicle moved forward and hit
him.  The evidence therefore shows that Vest was directly in front of the
vehicle when it stopped; he then walked in the direction of the driver=s side but was hit and lifted onto
the hood before he reached the side of the vehicle.  This evidence
supports the conclusion that appellant saw Vest in front of the vehicle and
intentionally or knowingly drove the vehicle into him.








Further, appellant=s suggestion that
he may have been simply reckless or negligent in thinking that Vest had already
cleared the front of the vehicle is not persuasive because (1) there is no
evidence to support it; (2) Vest testified that he was hit by the grill of the
vehicle and ended up on the hood; this was not a glancing blow; and (3) since
appellant was the driver and Vest was walking from directly in front to the
driver=s side, he would
have been directly in front of appellant when struck.  Finally, appellant=s conduct after
driving the vehicle into Vest also constitutes evidence of his intent to
threaten Vest and his knowledge that his actions would have that result.  See,
e.g., Henderson v. State, 825 S.W.2d 746, 749-50 (Tex. App.CHouston [14th
Dist.] 1992, pet. ref=d) (holding that in determining intent to
kill, jury was entitled to consider events occurring before, during, and after
commission of the offense).  Rather than stopping immediately after hitting
Vest, appellant continued to drive with Vest on the hood for what seemed like Aforever@ to Vest. 
Appellant suggests that he may have simply momentarily froze when he hit the
deputy and that he did not drive the vehicle Afor more than the
normal reaction and braking time.@  However, there
is no evidence to support these arguments; to the contrary, Vest=s ride on the hood
was long enough for him to pull his pistol, yell repeatedly at appellant to
stop, and call for assistance on his radio.  Additionally, after the passenger
stopped the vehicle and Vest got off the hood, appellant fled the scene.  See
Rodriguez v. State, 129 S.W.3d 551, 564 (Tex. App.CHouston [1st
Dist.] 2003, pet. ref=d) (holding that defendant=s attempt to flee
cast doubt on his claim that he did not know co-defendant had stolen a cash
register).

For the foregoing reasons, we find that the evidence was
legally and factually sufficient to support the jury=s finding that
appellant possessed at least one of the requisite mental states.  Accordingly,
we overrule his first issue.

B.  Threat








In his second issue, appellant contends that the evidence
was legally and factually insufficient to prove that he threatened Vest.  In
the recent opinion of Olivas v. State, the Court of Criminal Appeals
considered a challenge to the sufficiency of the evidence in the aggravated
assault by threat context.  203 S.W.3d 341, 342-351 (Tex. Crim. App. 2006). 
The Court held that evidence establishing the complainant=s perception of a
threat, coupled with proof that a threat was made, was sufficient to sustain
the conviction for aggravated assault by threat.  Id. at 350.[6]

Here, appellant contends that there was no evidence that
appellant communicated or Vest perceived any threat.  AThe gist of the
offense of assault . . . is that one acts with intent to cause a reasonable
apprehension of imminent bodily injury . . . .@  Garrett v. State, 619 S.W.2d 172,
174 (Tex. Crim. App. 1981); Edwards v. State, 57 S.W.3d 677, 679 (Tex.
App.CBeaumont 2001,
pet. ref=d).  It is well
established that threats can be conveyed in more varied ways than merely a
verbal manner; a threat may be communicated by action or conduct as well as by
words.  McGowan v. State, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984).[7] 


In McGowan, the court held that the evidence was
insufficient to prove assault by threat where the complainant was stabbed in
the back of the head and did not see the knife prior to being stabbed.  Id.;
see also Richardson v. State, 834 S.W.2d 535, 537 (Tex. App.CHouston [1st
Dist.] 1992, pet. ref=d) (holding evidence was insufficient to
prove threat where complainant was shot from behind without warning); Tullos
v. State, 698 S.W.2d 488, 490 (Tex. App.CCorpus Christi
1985, pet. ref=d) (holding evidence was insufficient to prove threat
where complainant was stabbed in the back).








Vest testified that appellant initially drove the vehicle
directly at him and stopped only when he (Vest) raised his hand and asked
appellant to stop.  Shortly afterwards, as Vest moved toward the driver=s side, the
vehicle started back up and drove into him at 5-10 miles per hour.  Vest
expressly stated that he felt very threatened when the vehicle started back up
and drove at him.  Appellant insists that Vest=s testimony must
be read as indicating that the movement of the vehicle, the impact, and his
feeling threatened Aall happened at essentially the same time.@  However, Vest=s testimony
clearly indicates a progression of events, not simultaneous occurrences.  The
vehicle moved toward him, stopped in front of him, started toward him again,
reached 5-10 miles per hour, then struck Vest.  In short, Vest=s testimony
clearly demonstrates that appellant=s conduct in
driving the vehicle at Vest communicated a threat and that Vest perceived that
threat before he was actually hit.  Thus, under McGowan and Olivas,
there was sufficient evidence to support the finding that appellant
communicated a threat against Vest.  Appellant=s second issue is
overruled.

C.  Deadly Weapon

In his third issue, appellant contends that the evidence
was legally and factually insufficient to prove his use of a deadly weapon
during the assault.  The Penal Code lists two categories of Adeadly weapons.@  See Tex. Penal Code Ann. ' 1.07 (Vernon
Supp. 2006); Robertson v. State, 163 S.W.3d 730, 732 (Tex. Crim. App.
2005).  The first category is comprised of those instruments designed to be deadly
weapons, including Aa firearm or anything manifestly designed,
made, or adapted for the purpose of inflicting death or serious bodily injury.@  Tex. Penal Code Ann. ' 1.07(a)(17)(A). 
The second category is comprised of those instruments whose use transforms them
into deadly weapons, including Aanything that in the manner of its use or
intended use is capable of causing death or serious bodily injury.@  Id. ' 1.07(a)(17)(B). 
A motor vehicle may become a deadly weapon if the manner of its use is capable
of causing death or serious bodily injury.  Drichas v. State, 175 S.W.3d
795, 798 (Tex. Crim. App. 2005).  Proof that the defendant possessed a specific
intent to use an instrument as a deadly weapon is not required.  Id.








Appellant notes that in order for an object to be
considered capable of causing death or serious bodily injury, more than mere
theoretical capability must be shown, citing In re S.B., 117 S.W.3d 443,
447  (Tex. App.CFort Worth 2003, no pet.), and Johnston
v. State, 115 S.W.3d 761, 764 (Tex. App.CAustin 2003), aff=d, 145 S.W.3d 215
(Tex. Crim. App. 2004).  Appellant then asserts that in every reported case
where a court has upheld a finding of use of an automobile as a deadly weapon,
at least one of two factors existed:  (1) the defendant drove the vehicle in a
reckless manner clearly endangering the lives of others, and (2) the defendant
rapidly accelerated the vehicle toward the complainant.  Appellant contends
that there is no evidence in the present case of either factor.

Even if we were to agree with appellant that one or the
other factor must be proven, the record here contains evidence supporting the
conclusion that both factors existed.  Vest=s testimony, that
appellant drove directly at him at 5-10 miles per hour, constitutes evidence of
much more than mere reckless driving; it demonstrates knowing and intentional
conduct that endangered Deputy Vest=s life.[8] 
Regarding the second supposed factor identified by appellant, the record
contains evidence of significant acceleration.  Vest testified that after
appellant initially drove at him and stopped, the vehicle was approximately one
to one-and-a-half car lengths from Vest.  Vest then began to move toward the
driver=s side of the
vehicle and the vehicle moved forward, hitting Vest at an estimated 5-10 miles
per hour.  For a stopped vehicle to reach 5-10 miles per hour in less than one
to one-and-a-half car lengths requires acceleration.








Furthermore, driving a vehicle at a person at 5-10 miles
per hour, fast enough to lift the person onto the hood as it did Deputy Vest,
is certainly capable of causing death or serious bodily injury.  It is within
common knowledge that use of automobiles has caused countless deaths and
serious injuries.  While the severity of the resulting injuries when a
pedestrian is actually hit by a vehicle may depend on a variety of factorsCincluding the
height, weight, and constitution of the person hit, the part of the body
impacted, and whether the person was knocked aside, onto the hood, or under the
tiresCsuch use is
capable of causing death or serious bodily injury.  See Johnson v. State,
150 S.W.3d 630, 638 (Tex. App.CAustin 2004, no pet.) (AThe State need not
prove that the defendant caused or even intended to cause death or serious
bodily injury in order to justify a deadly weapon finding; rather the State
must only prove that the actual use or intended use of the object was capable
of causing death or serious bodily injury.@); see also
United States v. Hoffman, 9 F.3d 49, 50 (8th Cir. 1993) (per curiam)
(rejecting argument that there was no risk of serious bodily injury in causing
slow-speed automobile collisions, stating Aa risk of this
kind of injury is inherent in the automobile accidents@)[9];
Dolkart v. State, 197 S.W.3d 887, 891 (Tex. App.CDallas 2006, pet.
ref=d) (rejecting
insufficiency of the evidence claim regarding use of vehicle as a deadly weapon
where defendant claimed she merely meant to tap complainant=s bicycle because
he was blocking her way, but complainant testified that she knocked him and his
bicycle to the ground); Duchan v. State, No. 14-06-00232-CR, 2007 WL
43775, at *3-4 (Tex. App.CHouston [14th Dist.] Jan. 9, 2007, no pet.
h.) (not designated for publication) (rejecting argument that evidence
suggesting vehicle was not moving very fast when it contacted complainant
rendered evidence insufficient to prove vehicle=s use was capable
of causing death or serious bodily injury).  Accordingly, the evidence was
sufficient to support the jury=s deadly weapon finding.  We overrule
appellant=s third issue.

III.  Jury Charge








In his fourth issue, appellant contends that the trial
court erred in refusing to instruct the jury on the lesser included offense of
simple assault by threat.  A defendant is entitled to a lesser‑included
offense instruction if (1) the requested instruction constitutes a lesser‑included
offense of the offense charged, and (2) there is some evidence that if the
defendant is guilty, he is guilty only of the lesser offense.  Irving v.
State, 176 S.W.3d 842, 845 (Tex. Crim. App. 2005).  We review the trial court=s decision
regarding a lesser-included-offense charge under an abuse of discretion
standard.   Jackson v. State, 160 S.W.3d 568, 572 (Tex. Crim. App.
2005).  The credibility of the evidence, and whether it conflicts with other
evidence, must not be considered in deciding whether the charge on the lesser‑included
offense should be given.  Saunders v. State, 840 S.W.2d 390, 391 (Tex.
Crim. App. 1992).  Anything more than a scintilla of evidence is sufficient to
entitle a defendant to a charge on a lesser included offense.  Bignall v.
State, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994).  It is not enough that the
jury disbelieves evidence pertaining to the greater offense; there must be some
evidence directly germane to the lesser‑included offense for the finder
of fact to consider before an instruction on a lesser‑included offense is
warranted.  Hampton v. State, 109 S.W.3d 437, 440-41 (Tex. Crim. App.
2003) (holding that instruction on lesser included offense was not warranted
when the only evidence supporting proposition that no knife was used in alleged
assault was State=s failure to find the knife; in other
words, there was no affirmative evidence of the lesser included offense for the
jury to consider).








In order to obtain a conviction for simple assault by
threat, the State must prove that the defendant intentionally or knowingly
threatened another with imminent bodily injury.  Tex. Penal Code Ann. ' 22.01(a)(2).  The
simple assault charge requested by appellant constituted a lesser included
offense of the aggravated assault charge actually given.  See Irving,
176 S.W.3d at 845-46.  The key distinction between the two offenses, as raised
by appellant, is that the aggravated assault charge required the State to show
that appellant used a deadly weapon during the commission of the assault,
whereas the simple assault charge did not.  See Tex. Penal Code Ann. '' 22.01(a)(2),
22.02(a)(2), 22.02(b)(2).[10] 
Accordingly, in order for appellant to have been entitled to the simple assault
charge, there must have been some evidence presented that would have permitted
a rational jury to find that appellant did not use a deadly weapon in
committing the assault.  More specifically, there must be some evidence upon
which the jury could have determined that appellant did not use his vehicle in
a manner capable of causing death or serious bodily injury.  See Garcia v.
State, 92 S.W.3d 574, 576 (Tex. App.CAustin 2002, no
pet.) (ATo be entitled to
an instruction on simple assault, it was necessary that there be some evidence
that would rationally warrant the jury in finding that appellant did not use
his truck as a deadly weapon.  It is not enough that the jury might simply
disbelieve crucial evidence; there must be some evidence that the truck was not
a deadly weapon in the manner of its use.@).

The only evidence regarding the events of the night in
question came from Deputy Vest=s testimony.  As discussed, he testified
that appellant initially drove directly at him and only stopped when he (Vest)
raised a hand and asked appellant to stop.  At that point, the vehicle was
approximately one to one-and-a-half car lengths from Vest.  Vest then began to
walk toward the driver=s side of the vehicle, and the vehicle
moved forward, hitting Vest at an estimated 5-10 miles per hour.  Although Vest
admitted that he could not tell exactly how fast the vehicle was traveling when
it struck him, he clearly and repeatedly stated that the vehicle struck him
with sufficient force to lift him onto the hood.[11] 
There is no evidence in the record suggesting that events were other than as
described by Vest.








Appellant=s driving his vehicle directly at Vest at
5-10 miles per hour, a speed sufficient to lift Vest completely onto the hood,
constituted operating the vehicle in a manner capable of causing death or
serious bodily injury.  See Hoffman, 9 F.3d at 50; Johnson, 150
S.W.3d at 638; Dolkart, 197 S.W.3d at 891.  Because there is no
affirmative evidence in the record that would have permitted a rational jury to
find that appellant was guilty only of simple assault, the trial court did not
abuse its discretion in refusing to submit the lesser included offense.  See
Garcia, 92 S.W.3d at 576.[12] 
We overrule appellant=s fourth issue.

We affirm the trial court=s judgment.

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Opinion filed March 27, 2007.

Panel consists of
Chief Justice Hedges and Justices Fowler and Edelman.

Publish C Tex. R. App. P. 47.2(b).









[1]  It could be reasonably assumed from the tenor and
context of Vest=s testimony that it was the Suburban=s alarm that was sounding; however, he does not say
this explicitly.





[2]  At another point in his testimony, Vest stated Aas I made my way up to the vehicle and I was going to
come around to the driver=s side, he came forward.@





[3]  On cross-examination, Vest said that he Acouldn=t tell . . .
exactly how fast the car was going.@





[4]  At one point in his testimony, Vest said that the
passenger A[put] the car in gear,@ and in another place he agreed the passenger put the car in Apark.@  It is clear
that Vest meant that the passenger took action to stop the vehicle.





[5]  For the most part, appellant makes the same
arguments in regards to both the legal and factual sufficiency of the
evidence.  Therefore, we will discuss and consider his arguments concurrently
under both standards of review.





[6]  In Olivas, the Court discussed in lengthy dicta what is required
to prove that a person threatened another with eminent bodily injury under the
assault by threat statute.  203 S.W.3d at 342-351.  Specifically, the Court
focused on whether the State must prove that the complainant perceived the
threat in order to establish the elements of the offense.  The Court suggested
that the answer is probably no, that the complainant need not have perceived
the threat in order for an offense to have occurred.  Id. at 345-49. 
However, because the Court ultimately concluded that it did not need to
definitively resolve the question in order to decide the issues raised in Olivas,
the question remains open.  Id. at 349; see also id. at 351-52
(Keller, P.J., concurring) (arguing that the Court should have definitively
held that a threat need not be perceived to constitute an offense).





[7]  Although the Court in Olivas explained that
several courts of appeals have misconstrued McGowan over the years (by
interpreting it as requiring that a threat must be perceived to constitute an
assault), the Court reaffirmed McGowan as controlling law.  203 S.W.3d
at 348-49.





[8]  Furthermore, it should be noted that the intent with
which a vehicle was used is not generally relevant to the question of whether
the vehicle was a deadly weapon in the manner of its use.  Walker v. State,
897 S.W.2d 812, 814 (Tex. Crim. App. 1995); Garcia v. State, 92 S.W.3d
574, 575 (Tex. App.CAustin 2002, no pet.).





[9]  The defendant in Hoffman undertook a
insurance fraud scheme whereby he caused auto collisions by driving in front of
slow-moving motorists and slamming on his breaks.  9 F.3d at 50-51.





[10]  Appellant does not raise another distinction between
the two offenses, namely that
aggravated assault on a public servant requires proof that the defendant knew
the object of the threat was a public servant, whereas such status is
irrelevant in regards to simple assault.  See Tex. Penal Code Ann. '' 22.01(a)(2), 22.02(a)(2), 22.02(b)(2).





[11]  Indeed, Vest testified that once he was lifted onto
the hood, his feet were rubbing the vehicle=s
front grill.  Vest indicated that he did not jump onto the hood, and there is
no evidence that he otherwise crawled or pulled himself further up the hood.





[12]  In Garcia, the court held that the defendant
was not entitled to a lesser included charge of assault where the jury was
charged on aggravated assault with a deadly weapon and the evidence
demonstrated that he drove his truck at 100 miles per hour toward oncoming
traffic and collided with another vehicle.  92 S.W.3d at 575-76.  Despite the
defendant=s testimony that he was only trying to escape the
police and did not intend to harm the complainants, the court found that there
was no affirmative evidence in the record Athat
would rationally support a finding that appellant assaulted the complainants
but did not use a deadly weapon in doing so.@  Id.
at 576; see also note 8 supra (discussing irrelevance of intent
in regards to deadly weapon finding).